May it please the court, Kelly Barnes, Billings, Montana, representing Mark Christensen. There were two issues presented to the court that I thought needed some addressing today. The first is in regard to Mr. Christensen's sentencing and whether the district court properly applied a two-level enhancement or adjustment to his sentencing guideline for unduly influencing a minor to engage in prohibited sexual activity, and that would be under guideline 2G1.3b2b. It's Mr. Christensen's position, and we think properly so, that that enhancement or adjustment should not apply. Now there are split, as the court's probably well aware, between the enhancement is involved because the minor happens to be an undercover FBI agent or a police officer. The rationale seems to be split between the two circuits as to whether the enhancement should apply if the officer is deemed a minor simply on the premise that the amendment in 2000 was to more seriously punish a particular offender, and that seems to be the extent of the analysis. And I think that's what the advance court and then its underlying precedent out of the 11th Circuit, the root court, seem to imply. The other circuits, the 6th and the 7th, in Midsomer Criswell, thank you, Your Honor, seem to take a little different approach, and that approach seems to be a bit more common sense in the sense that if it's truly an officer of the law and that person is still deemed a minor, can Mr. Christensen in his activity or any other individual really unduly influence that officer to do anything? If you take that language and that amendment to the guideline and then look at what the application notes ask us to do, they ask the district court to closely look at the facts in each particular case and then make a determination of whether that undue influence could actually apply. Counsel, how do you square your argument with the fact that the application note defines minor to include an undercover officer? Well, I would say, Your Honor, that we say, okay, we look at that, and then it's whether the defendant unduly influenced a police officer. The way I square it, Your Honor, is I say it was an attempt to amend that wasn't successful by the Sentencing Commission, that they needed to do more work in that particular amendment and hadn't really fully thought through what that particular change meant. And it seems that it becomes a little bit inconsistent, and it requires the district court to kind of suspend what really happened in that particular case. And it seemed like since 1988, the whole point of the guidelines has been to make sure that every little factor in a sentencing proceeding was accounted for. And if you just take it and say, okay, it's a police officer, and therefore Mr. Christensen unduly influenced this police officer, it requires us to do some suspension of the facts and belief, and that seems a little inconsistent, at least in my understanding of what the guidelines were originally designed to do. If you look at the definition of undue influence, not the definition, but the application notes reference to undue influence, it says in determining whether subsection B2B applies, the court should closely consider the facts of the case to determine whether the participant's influence of the minor compromised the voluntariness of the minor's behavior. And it uses the word should, not shall. Right, Your Honor. Does that suggest, you know, as the district court is trying to figure out whether to apply this enhancement, that really if you read it all, try to read it all together, what it's saying is that where there is a real victim,  I think that position makes sense, Your Honor. The Eleventh Circuit talks about trying to step up the punishment because it felt that maybe defendants were getting away when there was no real victim. But if you kind of look at a situation where there is a real victim, then maybe the punishment ought to be more harsh and that application ought to apply. But when you have an officer sitting on a computer in Billings, Montana, pounding away, communicating with someone, it seems like that the risk to the public is a bit less significant. Does that lessen the intent of the perpetrator? Just because he happened to engage an undercover officer as opposed to a real minor, does that make it less reprehensible? In some respects, I think so, Your Honor. Your Honor, it doesn't alter what Mr. Christensen did. But part of the sentencing factors we have to look at if we want to do that under 3553 is whether the public is adequately protected. Does the sentence reflect what the person involved was doing? And it seems to me that the guideline is written differently. It's asking us to focus on the victim where the victim is a police officer versus what the defendant actually did. And a lot of other guidelines are focused at what the defendant actually did. But this one here asks us to do something different. You look at both, what the perpetrator did and the effect it had on the victim. Yes, Your Honor, but it seems to me that it requires us to suspend a little bit our fair judgment of what happened when that particular person is an officer. The risk to the public is a lot less. And so I would say in a practicality sense that the punishment ought to be a little bit less. Why is the risk to the public less just because there is an undercover officer? Well, because we don't have a 13 or 14-year-old girl unsupervised by her parents communicating with this particular individual and encouraging him to come to Billings, Montana. But the risk is the same. It's just the victim happened to be an undercover officer. You still have the risk to the public that the victim just happened to be someone else. I mean, just by chance. That person is still at risk. Certainly we can't minimize all of it. But, I mean, this was a controlled situation, Your Honor, from the beginning. And it removed the possibility that an actual act could happen because it was controlled by law enforcement. If ultimately the sentence is tested by the concept of reasonableness, if ultimately we're concerned with reasonableness, what difference does it make? Your Honor, I'd have to tell you probably none. I mean, if we're back all the way to pre-1988 sentencing, and it's within the parameters of the statutory authority of the court, then I can't say that it does. But it is important in the sense that if you're going to base a sentence on a guideline calculation, as the Supreme Court has told us, we need to do that calculation right. And we'd submit it wasn't done right here. I had a second issue of a right to the court. I probably ought to move to that as I can. And the second issue was how the district court handled the consecutive sentencing here. Under the guideline, I think the United States would agree, is that when the court formulated its additional guideline calculation, the consecutive sentence was to be included within that. Instead, the district court calculated the guideline and then tacked on 24 months to reach its ultimate sentence of 210 months for Mr. Christensen. And I think the position of the United States as well, that doesn't matter because it was a mandatory guideline framework. We're not under a mandatory guideline now. We still have to calculate the guidelines correctly. I think it's like a factor of... Well, the group guideline was calculated correctly. Yes, it was. What the judge didn't do was, within that range, pinpoint how much he would give to the one count and how much he would give to the other count, so it all... Exactly right. He could have been. He could have said, well, you know, in the end, I don't think this is enough. He doesn't think this is enough. And so whether I depart under the guidelines or whether I move over to the 3553A factors and say this is what my sentence is going to be, which is apparently what he did, I don't know where there is reversible error. Well, I think it's reversible error, Your Honor, in the sense that we have to do a correct calculation of the guidelines, and if I may, it... He calculated a correct guideline. But the guideline calculation requires that consecutive sentence to be within that particular range. That's not part of the calculation. That's not part of the calculation. That's whether or not to run the sentence consecutively separately or to lump it in with the other calculation. But he calculated the guideline sentence. Then how he got to the ultimate sentence was what your issue is. But he calculated it correctly. He didn't make an error. Well, I understand what the court's saying, but I don't think suddenly that the guideline calculation stops because we have a later portion that says when it comes to the grouping that suddenly we don't have to follow 2J, whatever it was, that says you're supposed to fit the appendix. What do you suggest the sentence should have been? If we were to deduct the enhancement for... Grouping. Yeah. What would the sentence... Would have been 168, I believe, plus 24 months. So I think approximately 188, which would have been at the top end of that particular guideline, excusing the enhancement for unduly influencing a minor. He obviously didn't think that was enough, that total amount. Within the guideline, the upper end of the guideline range, he didn't think that was enough. Correct. I guess, Your Honor, Judge Siebel follows the guidelines very closely, and to me it's a qualitative difference to say, okay, the sentence that the guideline says is appropriate along with the grouping in this particular range, but I don't find that's enough, and I'm going to go over here. And that's the difference in what would have to have happened at the district court. Isn't that pretty much what he said? He says a sentence towards the high end of the guideline of 186 months with 24 months consecutive on the absconding prior to trial would serve the purposes of 3553. Isn't that pretty much what he did? He said, I just don't think that's enough. After I made the objection, that's what he said, Your Honor. Would he have said that when he knew that the guideline and groupings hadn't pushed the sentence that far and wouldn't have felt the freedom or the liberty to add the consecutive where he did? I just don't think we can make that conclusion here and would ask the court to remand that back. Okay. Thank you. I'll give you some extra time for rebuttal. Thank you again, Your Honor. It's Leif Johnson once again for the United States. Judge Rawlinson and Judge Paius, I think your questions went directly to the heart of this undue influence issue. The application note 3B instructs the court, it suggests that the court should closely look at how the victim responded to the defendant's influences. And as you noted, it's clearly a signal to the district court that it must do something more than it does in most cases when it's applying a guideline enhancement because this is under the offense conduct portion of the guidelines. And under almost all of those enhancements, the court looks solely to the conduct of the defendant to determine if the guideline applies. But in the undue influence section, obviously, the commission is saying, we want you to take a broader view here. We want you to look not only at the defendant's conduct, which you do in almost all cases, but also at how the victim responded. And that's why application note 3B is there. And that's why it says should. And clearly, it doesn't say must. It doesn't say shall. And it doesn't foreclose the district court from taking that broader view. One other point that I think is really important to note here that neither Mitchell or Criswell or any court has really expressed in any firm way. And that is, if you read the undue enhancement with the definitions of its terms, the various terms within it, it makes perfect sense and it goes right along with the definition of minor. If we assume, or we don't need to assume, if we acknowledge that the statute here, 2422B, prohibits attempts, it does. It expressly says that. We can fold that into the enhancement. If we fold in the definition of minor, and if we take the definition of influence from the Criswell case on page, I think it was 449, the court there went to the Oxford English Dictionary and looked up some definitions of influence. And one of those, not all of them, but one of them was to exert influence upon. So if we fold all of these things together, this guideline can be fairly read to say that a participant otherwise exerted undue influence upon a minor or an undercover police officer posing as a minor to engage in prohibited sexual conduct or in an attempt to engage in prohibited sexual conduct. And by reading it in this expansive way with these terms defined, it's very clear that the enhancement applies both to how the victim reacted and to what the defendant did. And in this case, it applies quite directly. The defendant in this case exerted undue influence upon an undercover officer in an attempt to have prohibited sexual conduct. I don't think it's fair to say he exerted undue influence upon the officer. I think he attempted to do that. Well, but if we're looking at the defendant's conduct, and that's what we need to do, that was clearly an exertion of undue influence upon something that he believed he had done wrong. How is that an exertion of undue influence if it didn't influence the person? The use of language, the use of cajoling, enticement, this guideline provision is set forth to discourage and deter predatory conduct. And that's what it's there for. It is part of the offense conduct portion of the guidelines. So when a defendant sends the types of communications and e-mails and says, I'll pay you for sex, I want to pay you to find other victims, that's influential conduct. But how do you define undue influence? Well, it depends on the case. It depends on how much of that conduct the defendant applied in order to attempt to have prohibited sex. Let me give you an example that I think really encourages the court to take a broader view here. Let's say we had an eggshell skull victim who was a 13-year-old runaway from home, maybe has a drug habit. And the defendant contacts her and he does very little to influence her at all. He says, you know, I'll protect you. And, you know, she agrees to have sex with him or what have you. In that instance, the court could look at the victim and say, well, she was, you know, her voluntariness of her actions was overcome. I understand that. Even though the defendant did very little. Put that in the context of an undercover officer, though. Or what if the person is an influence? What if you have that same victim and they use all of those tricks and none of them work? Is that undue influence still? Yes. I think that's why the guideline asks the court to look at both sides of the equation. Let's say it's a 16-year-old and she knows exactly what's going on. And she plays along with him and he goes on for months like this. Obviously, if, you know, when they come to make a rendezvous, if the police arrest him, she wasn't influenced. But that shouldn't be the end of the inquiry. The court should be fully armed with the entire record. To me, that would be an attempt rather than an exertion of undue influence because it didn't work. Well, I mean, clearly, I guess you could portray it that way. But but I think the larger view here that escapes all of Mitchell and Criswell's reasoning is that, you know, if you have two defendants who do exactly the same thing and the harm to society in the broader sense is the same and one happens to be an undercover officer and the other one doesn't, they get different punishment. And that's simply from from that view. It's unfair. And Mitchell and Criswell do nothing to rectify that problem. The guideline here can be fairly read to include the definition of minor. And that's the bottom line. Mitchell and Criswell take a redacting pen to that definition. And they didn't need to, because, as I said, the application note 3B really is a suggestion that the court look further than it does traditionally under the offense conduct portions of the guideline. And Judge Wallinson, I think you're probably right. It's an attempt to exert undue influence. The wording actually is took active measures to unduly influence. And so that supports a broader reading than exerting undue influence. Yes, it does. It does. And that's correct. Your Honor. Two other issues from the Criswell Mitchell cases that I think are erroneous. This whole idea of the rebuttable presumption, a defendant can rebut that presumption based on his own actions. And that should be pretty clear. I mean, if he's older than a defendant and he doesn't trade on his age and she doesn't know his age, he should be able to tell the court, look, that presumption shouldn't apply to me because I didn't use my age had nothing to do with the influence that was applied. So I think in the in the long view, Mitchell and Criswell overlook what is a reasonable interpretation of the enhancement with minor fully defined. And this court should do that in concert with the Eleventh Circuit's definition. Very quickly on the issue of the grouping in this case. I just want to make note for the record. Number one, I mean, when we're talking about a significant procedural error at the conclusion of sentencing, Mr. Barnes did raise the issue of grouping and you'll note it. It's in the transcript and the record right at the conclusion of the sentencing. And the judge's response was, oh, well, you know, if that's the case, I think thirty five fifty three factors still justify this sentence, which is to say that the court was apprised of this issue. The court was apprised that if he was going to go two hundred and ten months, that it would be a variance. And in fact, if you look at your page seventy seven, the court's judgment here, there's quite a long paragraph in there where the court does explain thirty five fifty three factors and its reasoning for that variance. If the court has no further questions. Thank you. No. OK, thank you. I hope to see you again.
judges: Paez, Rawlinson, Jenkins